UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MUELLER SPORTS MEDICINE, INC.,

        Plaintiff,

                            Case No. _____

v.

HOWIE'S HOCKEY, INC., d/b/a       Hon. _____
HOWIES HOCKEY TAPE,

        Defendant.

---

## COMPLAINT

Plaintiff, Mueller Sports Medicine, Inc. ("Mueller" or "Plaintiff"), by and through its attorneys, VARNUM LLP, states for its Complaint against Defendant, Howie's Hockey, Inc., d/b/a Howies Hockey Tape ("Howie's" or "Defendant"), as follows:

## PRELIMINARY STATEMENT

1. Mueller exclusively owns the well-known and famous taped ankle design trademark,  (Mueller's "Taped Ankle Design Mark"), which it has used in commerce since at least as early as March 1984 on a wide range of goods, including, but not limited to, athletic tape and related sports medicine products in International Classes 005, 010, and 028, among others, and holds multiple United States and international trademark registrations for the Taped Ankle Design Mark and composite marks containing the Taped Ankle Design Mark.

2. On December 19, 2025, Mueller—through counsel—sent Howie's a letter containing a formal notice of trademark rights and allegations of infringement, which identified Howie's recent manufacture, advertising, and sale of goods bearing the mark  (the

"Infringing Mark"), which is nearly identical to the Taped Ankle Design Mark, and demanding that Howie's immediately cease-and-desist use of the Infringing Mark, amongst other demands.

3.     Howie's utilized the Infringing Mark on its website, www.howieshockeytape.com; on its related webstore; directly on, in connection with, and/or to otherwise promote the sale of its athletic tape, athletic laces, clothing and apparel, and related goods ("Infringing Goods").

4.     Mueller has not authorized Howie's to use or otherwise trade upon Mueller's famous Taped Ankle Design Mark in connection with Howie's manufacture, promotion, advertising, marketing, offer for sale, or sale of Howie's Infringing Goods.  Neither Howie's itself nor the Infringing Goods are endorsed by, sponsored by, or otherwise affiliated with Mueller.

5.     Howie's use of the Infringing Mark on and in connection with the Infringing Goods is likely to cause consumer confusion, mistake, and deception as to source, affiliation, sponsorship, or approval, and constitutes infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and trademark dilution by blurring under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), amongst other claims.

6.     Accordingly, this action seeks injunctive relief, damages, including Howie's profits and Mueller's actual damages, enhanced and exemplary damages, attorneys' fees and costs, and all other appropriate relief, consistent with the structure and remedies afforded under applicable law, including trebling the amount of damages in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117).

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiff Mueller Sports Medicine, Inc. is a corporation organized under the laws of the State of Wisconsin, with its principal place of business located at One Quench Drive, P.O. Box

99, Prairie du Sac, WI 53578.

8.    Defendant Howie's Hockey, Inc., d/b/a Howies Athletic Tape is a corporation organized under the laws of the State of Michigan, with its principal place of business at 6658 East Paris Avenue Southeast, Caledonia, MI 49316.

9.    This Court has original subject matter jurisdiction over this controversy pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338 because Plaintiff's federal trademark claims arise under the Lanham Act, specifically 15 U.S.C. §§ 1114 and 1125.

10.    This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Mueller's state law claims because they arise from the same operative facts and are so related that they form part of the same case or controversy.

11.    Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in this district.

12.    This Court has personal jurisdiction over Howie's because, among other things, Howie's resides in Michigan, particularly in this judicial district; advertises, distributes, and sells its products to residents of the State of Michigan and in this judicial district; and Howie's otherwise purposefully directs and conducts business within Michigan and this judicial district. Thus, Howie's is subject to this Court's specific and general personal jurisdiction. Further, at least a portion of this dispute occurred in the State of Michigan and in this judicial district.

## GENERAL ALLEGATIONS

**A. MUELLER AND ITS TAPED ANKLE DESIGN MARK.**

13.     Since 1963, Mueller has been in the business of, among other things, making and selling various sports medicine products, including athletic tape, kinesiology tape, and related products ("Mueller's Goods"), as well as secondary source products for the same.

14.     Since at least 1984, Mueller has used the Taped Ankle Design Mark in interstate commerce in connection with the manufacture, sale, advertising, promotion, marketing, distribution, or offer for sale of Mueller's Goods.

15.     More particularly, since at least as early as March 28, 1984, Mueller has continuously produced, advertised, promoted, offered for sale, marketed, distributed, and sold Mueller's Goods under its Taped Ankle Design Mark and other composite marks containing the Taped Ankle Design Mark to purchasers and consumers of sports medicine products, including consumers of athletic and kinesiology tape and related products, throughout the United States through its authorized and defined distribution and sales networks, including, but not limited to big-box stores, supermarkets, and pharmacies (e.g., Walmart, CVS, Walgreens, etc.), sporting goods stores, through its online website at https://www.muellersportsmed.com/b2c-us/en/ (hereinafter, "Mueller's Website"), which enables direct sales to consumer throughout the United States, and through direct sales channels to athletic teams and athletic trainers.

16.     In addition to owning common law rights in the Taped Ankle Design Mark and composite marks containing the Taped Ankle Design Mark, garnered through continuous and exclusive use in interstate commerce, Mueller owns the following U.S. trademark registrations for the Taped Ankle Design Mark and composite marks containing the Taped Ankle Design Mark.

The below-listed registrations are valid and subsisting, and are prima facie evidence of the validity of the respective registrations, as well as ownership of the same by Mueller:

-  (Registration No. 6597484) registered on December 21, 2021, covering goods in International Class 018 (Date of First Use January 1, 1985).

-  (Registration No. 6597485) registered on December 21, 2021, covering goods in International Class 021 (Date of First Use January 1, 1985).

-  (Registration No. 3695173) registered on October 13, 2009, covering goods in International Class 005 (Date of First Use March 30, 1984).  This registration is incontestable.

-  (Registration No. 3695175) registered on October 13, 2009, covering goods in International Class 010 (Date of First Use June 1, 1984).  This registration is incontestable.

-  (Registration No. 3695176) registered on October 13, 2009, covering goods in International Class 028 (Date of First Use March 28, 1984).  This registration is incontestable.

-  (Registration No. 3698097) registered on October 20, 2009, covering goods in International Class 005 (Date of First Use March 30, 1984).  This registration is incontestable.

- **Mueller** (Registration No. 3698098) registered on October 20, 2009, covering goods in International Class 010 (Date of First Use March 30, 1984).  This registration is incontestable.

- **Mueller** (Registration No. 3698099) registered on October 20, 2009, covering goods in International Class 028 (Date of First Use March 30, 1984).  This registration is incontestable.

- **Mueller** (Registration No. 1485883) registered on April 26, 1988, covering goods in International Class 005 (Date of First Use March 30, 1984) and goods in International Class 028 (Date of First Use March 28, 1984).  This registration is incontestable.

17.    True and correct copies, generated from the United States Patent and Trademark Office (USPTO) Trademark Status & Document Retrieval (TSDR) system, of the above-listed registrations for the Taped Ankle Design Mark and the composite design marks that contain the Taped Ankle Design Mark are attached hereto as **Exhibit A** and are incorporated by reference as though fully set forth herein (the "Asserted Registrations").

18.    Trademark Registration Nos. 3695173, 3695175, 3695176, 3698097, 3698098, 3698099, and 1485883 are incontestable, and as such, each registration is conclusive evidence of the validity of the registered mark, of Mueller's ownership of the mark, and of Mueller's exclusive right to use its registered mark in commerce.

19.    Pertinent to this dispute, and as demonstrated in the below exemplars of the depicted Mueller Goods, the Mueller Taped Ankle Design Mark (amongst other registered standard character or composite marks owned by Mueller) is displayed prominently on the Mueller

Goods themselves and/or on the packaging and other materials offered with the Mueller Goods at the point of sale:[1]



| **Mueller's TYPHOON® Elite Kinesiology Therapeutic Tape – Black** | |
| **Mueller's TYPHOON® Elite Kinesiology Therapeutic Tape – Beige** | |
| **Mueller's MTape®** | |

---

[1] The following table is not meant to be an exhaustive list of all of Mueller's products sold under its Taped Ankle Design Mark; but rather, is aimed as providing illustrative examples of Mueller's prominent and broad use of its Taped Ankle Design Mark in connection with the Mueller Goods.

| | |
|---|---|
| **Mueller's ATHLETIC CARE® Porous Tape** |  |
| **Mueller's MLASTIC® Tape** |  |
| **Mueller's EUROTAPE®** |  |
| **Mueller's Stretch MTAPE® Premium** |  |

| | |
|---|---|
| **Mueller's EAB Tape – Elastic Adhesive Bandage** |  |
| **Mueller's FLEXLIGHT™** |  |
| **Mueller's THOR® Tape** |  |
| **EZ Relief™ Foot Sleeve - Black** |  |

| | |
|---|---|
| **Mueller Hero® Utility** |  |
| **Mueller Hero® Unsung** | |
| **Mueller          Hero® Response** | |

20.    Mueller's Taped Ankle Design Mark is also frequently used on Mueller's advertising and promotional materials for Mueller's Goods, as well as on Mueller's Website.

21.    For decades, Mueller has expended considerable effort and expense in promoting its Taped Ankle Design Mark in connection with the Mueller Goods, in both the United States and internationally.  Resultantly, Mueller's Taped Ankle Design Mark has come to embody substantial and valuable reputation and goodwill in the marketplace in connection with the goods and services offered thereunder.

22.    For instance, products offered under Mueller's Taped Ankle Design Mark have been featured in numerous collegiate and professional sports broadcasts and other media outlets, including being referenced by top sports commentators and pundits in a variety of mediums.

23.    In addition to their own advertising efforts, products offered under Mueller's Taped Ankle Design Mark have also been the subject of countless unsolicited stories in digital and print media, highlighting the quality and innovative nature of the goods and services offered under the Taped Ankle Design Mark.  Products offered under the Taped Ankle Design Mark have been featured in digital and print media, in publications such as, but not limited to:  *ESPN* news articles, the *PR Newswire*, and *Yahoo! Finance*.

24.    Additionally, products offered under Mueller's Taped Ankle Design Mark have been featured in numerous scripted and unscripted television media productions, including, but not limited to *Dancing With The Stars* airing on the ABC Television Network, *Landman* airing on the Paramount Network cable channel, *The Balancing Act* airing on the Lifetime cable network, as well as in feature films, such as *Happy Gilmore 2*.

25.    Moreover, Mueller has partnered with famous athletes, including, but not limited to Rafael Nadal, Randy Moss, Donald Driver, Anna Leigh Waters, and former U.S. Women's

National Team Co-Captain Alex Morgan.  Alex Morgan, Rafael Nadal, and Randy Moss, amongst others, have appeared in ads for Mueller Goods and on certain items of packaging, as well as on the *Mueller Sports Medicine Blog*, to promote Mueller products:





 



26.    Mueller products are regularly seen in use in competition by well-known collegiate and professional athletes.

27.    Moreover, due to Mueller's exclusive and continuous use of the Taped Ankle Design Mark, the extensive advertising and promotion of the goods and services provided in connection with the Taped Ankle Design Mark, endorsement by well-known and famous athletes, and the unsolicited media coverage in connection with goods and services provided under the Taped Ankle Design Mark, among other factors, the Taped Ankle Design Mark has become famous and well-known throughout the United States and firmly associated with Mueller.

28.    Likewise, through the extensive and widespread use of the Taped Ankle Design Mark by Mueller, as well as the high degree of consumer recognition of the Taped Ankle Design Mark by consumers of the Mueller Goods and the general consuming public in the United States, the Taped Ankle Design Mark has become commercially strong and has become famous as a source indicator for Mueller.

29.    Moreover, the Taped Ankle Design Mark was famous at the time Howie's began using the Infringing Mark in United States commerce.

B.    DEFENDANT HOWIE'S UNLAWFUL USE OF THE INFRINGING MARK.

30.    Howie's Hockey, Inc., d/b/a Howies Athletic Tape is in the business of, among other things, manufacturing, advertising, promoting, offering for sale, and selling athletic tape products.

31.    Howie's has been in business since on or about July 26, 2007.    "From the beginning, [it] had one simple goal in mind:  to make the highest quality athletic tape products at the best possible price for athletic trainers across the globe."  *See* Howies Athletic Tape, *Our Mission* (last visited January 19, 2026) https://howiesathletictape.com/pages/our-mission.

32.     In addition to manufacturing, advertising, promoting, offering for sale, and selling athletic tape products, Howie's also manufactures, advertises, promotes, offers for sale, and sells athletic laces, apparel, and related sports medicine products.

33.     As set forth in Mueller's December 19, 2025, letter, attached hereto as **Exhibit B**, Howie's, without Mueller's authorization and after Mueller acquired protectable exclusive rights in its Taped Ankle Design Mark, adopted and began using the Infringing Mark in connection with its manufacture, advertising, promotion, offering for sale and sale of its Infringing Goods.

34.     In particular, at sometime between at least as early as December 9, 2025 and present, Howie's manufactured, advertised, promoted, offered for sale, and otherwise sold Infringing Goods bearing the Infringing Mark on its own website, and/or through other trade channels, and otherwise used the Infringing Mark in connection with the Infringing Goods to indicate an endorsement, sponsorship, or affiliation with Mueller to increase sales of Howie's Infringing Goods sold in competition with Mueller.

35.     The Infringing Mark adopted and used by Howie's is nearly identical to Mueller's Taped Ankle Design Mark and clearly invokes a substantially similar commercial impression when used on and in connection with the Infringing Goods.

36.     The Infringing Goods are identical in some instances and at least substantially similar or related to Mueller's Goods.

37.     Likewise, Howie's has marketed, advertised, and promoted its Infringing Goods under or in-connection with the Infringing Mark to identical target consumers, i.e., consumers of sports medicine products (athletes, athletic trainers, and other sports related personnel or enthusiasts) though substantially similar channels of trade, i.e., through online sales and other retail channels, in Michigan and in this judicial district.

14

38.     As a result of Howie's use of the Infringing Mark in connection with the Infringing Goods as detailed herein (hereinafter the "Infringing Acts"), on December 19, 2025, Mueller sent Howie's a demand letter objecting to Howie's use of the Infringing Mark.    Attached hereto as **Exhibit B** is a true and correct copy of the same.

39.     To date, Mueller has received no formal or written response to its cease-and-desist letter and, after reasonable inquiry, has no evidence that Howie's has complied with the demands set forth therein, other than the removal of the online listing for the sale of the apparel bearing the Infringing Mark.

40.     Howie's Infringing Acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Howie's Infringing Goods sold under or in connection with the Infringing Mark.

41.     Additionally, consumers viewing Howie's use of the Infringing Mark are likely to believe Mueller is associated with Howie's promotion and sale of its products, that Mueller is the source of Howie's Infringing Goods, or that Mueller has licensed, sponsored, endorsed, or otherwise approved Howie's use of its Taped Ankle Design Mark, which is not the case.

42.     Upon information and belief, Howie's Infringing Acts are willful with the deliberate intent to call to mind, trade on the goodwill of, and/or trade off the fame of Mueller's Taped Ankle Design Mark, cause confusion and deception in the marketplace, and divert potential sales of Mueller's Goods to Howie's.

43.     Howie's Infringing Acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Mueller and to its valuable reputation and goodwill with the consuming public for which Mueller has no adequate remedy at law.

## COUNT I - FEDERAL TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114(1)

44.     Mueller repeats and realleges paragraphs 1 through 43 hereof, as if fully set forth herein.

45.     Mueller, owns valid, subsisting, and enforceable trademark rights in the Asserted Registrations for its Taped Ankle Design Mark and composite mark containing the Taped Ankle Design, including, but not limited to U.S. Reg. Nos. 3,695,173; 3,695,175; 3,695,176; 6,597,484; 6,597,485; 698,097; 3,698,098; 3,698,099; and 1,485,883.

46.     Mueller has continuously used its Taped Ankle Design Mark in connection with the sale, marketing, advertising, and promotion of the Mueller Goods in interstate commerce since at least as early as its recited date of first use as March 28, 1984.

47.     Mueller's recited date of first use of March 28, 1984, pre-dates the existence of Howie's by more than twenty years, and Howie's alleged use of the Infringing Mark by more than 50 years.  As such, Mueller has clear priority use of the Taped Ankle Design Mark.

48.     Any use of the Taped Ankle Design Mark by Howie's has been without the consent of Mueller.

49.     In particular, Howie's use in interstate commerce of the Infringing Mark on and in connection with the Infringing Goods constitutes use of a reproduction, counterfeit, copy, or colorable imitation of Mueller's registered Taped Ankle Design Mark, in a manner likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Howie's with Mueller, or as to the origin, sponsorship, or approval of Howie's Infringing Goods by Mueller.

50.     Howie's has committed the foregoing Infringing Acts alleged herein with full knowledge of Mueller's prior rights in and to the Taped Ankle Design Mark and with the willful intent to trade on the longstanding reputation and goodwill of Mueller and its Taped Ankle Design

16

Mark, cause confusion and deception in the marketplace, and divert potential customers and their respective sales from Mueller to Howie's.  Such Infringing Acts constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

51.    Howie's conduct as alleged herein has caused and will continue to cause Mueller to suffer damages including, but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

52.    Mueller is entitled to, among other relief, injunctive relief and an award of actual damages, Howie's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II - FEDERAL UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

53.    Mueller repeats and realleges paragraphs 1 through 52 hereof, as if fully set forth herein.

54.    Howie's unauthorized use in commerce of the Infringing Mark with the Infringing Goods constitutes a false designation of origin and false or misleading description or representation of fact, likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Howie's Infringing Goods by Mueller, or as to the affiliation, connection, or association of Howie's and/or its Infringing Goods with Mueller.

55.    Howie's unauthorized use in commerce of the Infringing Mark in connection with the Infringing Goods as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact, and Howie's willful and deliberate conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

17

56.     Howie's conduct as alleged herein has caused and will continue to cause Mueller to suffer damages including, but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

57.     Mueller is entitled to, among other relief, injunctive relief and an award of actual damages, Howie's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III - UNFAIR COMPETITION AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT

58.     Mueller repeats and realleges paragraphs 1 through 57 hereof, as if fully set forth herein.

59.     The Michigan Consumer Protection Act (MCPA) prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" including, inter alia, "[c]ausing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services."  See Mich. Comp. Laws § 445.903.

60.     Howie's unauthorized use in commerce of the Infringing Mark in connection with the Infringing Goods as alleged herein is likely to cause confusion, cause mistake, or otherwise deceive consumers as to the origin, source, sponsorship, or affiliation of Howie's goods by or with Mueller, and is likely to cause consumers to believe, contrary to fact, that Howie's goods are sourced from or are sold, authorized, endorsed, or sponsored by Mueller, or that Howie's itself is in some way affiliated with or sponsored by Mueller.

61.     Howie's conduct as alleged herein has caused and will continue to cause Mueller to suffer damages including, but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

62.     Mueller is entitled to, among other relief the Court deems just and equitable, a judgment that Howie's has violated the MCPA, and actual damages and reasonable attorneys' fees and costs under the MCPA.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

63.     Mueller repeats and realleges paragraphs 1 through 62 hereof, as if fully set forth herein.

64.     Howie's unauthorized use in commerce of the Infringing Mark  in connection with the Infringing Goods as alleged herein is likely to cause confusion, cause mistake, or otherwise deceive consumers as to the origin, source, sponsorship, or affiliation of Howie's goods by or with Mueller, and is likely to cause consumers to believe, contrary to fact, that Howie's goods are sourced from or are sold, authorized, endorsed, or sponsored by Mueller, or that Howie's itself is in some way affiliated with or sponsored by Mueller.

65.     Howie's conduct, as alleged herein, has had a substantial effect on interstate commerce and constitutes common law trademark infringement.

66.     Howie's conduct as alleged herein has caused and will continue to cause Mueller to suffer damages including, but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

67.     Therefore, Mueller is entitled to, among other relief, a judgment that Howie's has committed common law trademark infringement, injunctive relief and an award of actual damages, Howie's profits, enhanced damages and profits, reasonable attorneys' fees and costs, together with prejudgment and post-judgment interest, among all other such relief this Court may determine is just and equitable.

## COUNT V– TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(C)(1)

68.    Mueller repeats and realleges paragraphs 1 through 67 hereof, as if fully set forth herein.

69.    Mueller, owns valid, subsisting, and enforceable trademark rights in the Asserted Registrations for its Taped Ankle Design Mark, including, but not limited to U.S. Reg. Nos. 3,695,173; 3,695,175; 3,695,176; 6,597,484; and 6,597,485.

70.    Mueller also owns valid, subsisting, and enforceable trademark rights in the Asserted Registrations for its composite design mark **Mueller**, which contains the Taped Ankle Design Mark, including, but not limited to U.S. Reg. Nos. 3,698,097; 3,698,098; 3,698,099; and 1,485,883.

71.    Mueller has continuously used its Taped Ankle Design Mark in connection with the sale, marketing, advertising, and promotion of the Mueller Goods in interstate commerce since at least as early as its recited date of first use as March 28, 1984.

72.    Mueller's Taped Ankle Design and composite design mark **Mueller**, which contains the Taped Ankle Design Mark are inherently distinctive and conceptually strong.

73.    As a result of the long, widespread, and continuous use and promotion of, the notable sales volumes of goods mark by, advertising volumes related to, and notable publicity afforded to  the Mueller's Taped Ankle Design Mark  and composite design mark **Mueller**, such marks have a high degree of consumer recognition in that the same and are  widely recognized by (1) the consumers of sports medicine products (athletes, athletic trainers, and other sports related personnel or enthusiasts); and (2) the general consuming public of the United States, as a designation of the goods and services of Mueller and are famous under 15 U.S.C. § 1125(c).

74.    Mueller's Taped Ankle Design Mark became famous before the Howie's ever used the Infringing Mark, or likely before Howie's was even established as an ongoing business concern.

75.    The degree of similarity between the Infringing Mark and the Mueller's Taped Ankle Design Mark is so great as to be likely to cause an association between the respective marks that impairs the distinctiveness of the Taped Ankle Design Mark and weakens the connection in the public's mind between the Taped Ankle Design Mark and the distinctive quality of goods and services of Mueller and Mueller's famous Taped Ankle Design Mark.

76.    Howie's Infringing Acts have caused and are likely to continue to cause trademark dilution by blurring of the famous Taped Ankle Design Mark, as Howie's Infringing Acts were done with the deliberate intent to call to mind, trade on the goodwill of, and/or trade off the fame of Mueller's Taped Ankle Design Mark in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

77.    Howie's conduct as alleged herein has caused and will continue to cause Mueller to suffer damages including, but not limited to lost profits from lost sales and injury to business, reputation, and goodwill in an amount presently unknown and to be ascertained at trial.

78.    Howie's conduct as alleged herein has causes and are continuing to cause great and irreparable harm to Mueller and, unless permanently enjoined by this Court, such irreparable harm will continue.

79.    Mueller is entitled to, among other relief, injunctive relief and an award of actual damages, Howie's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A.    That Howie's has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

B.    That Howie's has violated Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

C.    That Howie's has violated The Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901 *et seq.*) and the common laws of the State of Michigan.

D.    That Howie's has committed common law trademark infringement.

E.    Granting an injunction temporarily, preliminarily, and permanently enjoining Howie's, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    i.    Manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise, or promote any of the Infringing Goods bearing the Infringing Mark, or any substantially similar imitation thereof, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Mueller's Taped Ankle Design Mark.

    ii.    Engaging in any activity that infringes Mueller's rights in and to its Taped Ankle Design Mark, pursuant to the Asserted Registrations;

    iii.    Engaging in any activity constituting unfair competition with Mueller;

    iv.    Making or displaying any statement, representation, or depiction that is likely to lead the relevant consuming public to believe that Howie's Infringing Goods

are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Mueller;

v.     Using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods, and/or services with Mueller or tend to do so;

vi.     Registering, applying to register, or maintaining on any register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating Mueller's Taped Ankle Design Mark, or any other mark that infringes or is likely to be confused with Mueller's Taped Ankle Design Mark; and

vii.     Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) through (vi).

F.     Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Howie's under the Infringing Mark is in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Mueller or constitute or are connected with the Mueller's Goods.

G.     Directing Howie's to immediately cease all display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all social media accounts, websites, advertisements, signs, displays, and other materials that feature or bear any designation

or mark consisting of the Infringing Mark, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Infringing Mark, and to direct all individuals and establishments wherever located in the United States that advertise, promote, sell, or offer for sale Howie's goods under or in connection with the Infringing Mark to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, advertisements, signs, displays, and other materials featuring or bearing the Infringing Mark, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation thereof, and to immediately remove them from public access and view.

H.      Directing, pursuant to Section 34(a) of the Lanham Act (15 U.S.C. § 1116(a)), Howie's to file with the Court and serve upon Mueller's counsel within thirty (30) days after service on Howie's of an injunction in this action, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Howie's has complied therewith.

I.      Awarding Mueller an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

J.      Directing that Howie's account to and pay to Mueller all profits realized by its Infringing Acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

K.      Awarding Mueller punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

L.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Mueller its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

M.     Awarding Mueller interest, including prejudgment and post-judgment interest, on the foregoing sums.

N.     Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

**VARNUM LLP**
*Attorneys for Plaintiff*

Dated: January 26, 2026                By: _____
Staci R. DeRegnaucourt (P75383)
Justin M. Wolber (P85728)
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
srderegnaucourt@varnumlaw.com
jmwolber@varnumlaw.com